FILED
SEP 23 2013
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| DENNIS OLIVARES | § | |
| | § | |
| Plaintiff | § | |
| v. | § | |
| | § | Civil No. SA-12-CA-I071-HLH |
| RAUSCH, STURM, ISRAEL, ENERSON | § | |
| & HORNIK, LLC. | § | |
| Defendant | § | |
| | § | |

## MEMORANDUM in Support of HEARING on PLAINTIFF'S MOTION TO COMPEL INITIAL DISCOVERY

Comes now the Plaintiff, *in forma pauperis et pro se*, pursuant to the due-process provisions of the *Federal Rules of Civil Procedure*, including this Court's *Local Rules*, as well as the Fifth and Ninth Amendments to the United States Constitution, to SUPPORT and clarify with this Brief his previously filed Motion to Compel Initial Disclosures from Defendants, which Motion is scheduled for oral argument in open court on the afternoon of Wednesday September 25, 2013. Prompted by the granting of such imminent Hearing, Defendants have rapidly filed corresponding Motions for Sanctions and for Telephonic Appearance, making substantive responses due at or around the time for said Hearing. Plaintiff hereby objects and OPPOSES both of these flash-Motions and herewith rebuts much of their outrageous assertions as well as is practicable with such short notice and with the subject of the forthcoming Hearing of *primary* importance. Separate Oppositions will be filed as feasible.

## Background

Plaintiff had vigorously attempted to serve his initial written Discovery Set through his former Counsel as early as April; however, this desire was consistently thwarted and became the primordial cause for the withdrawal of said Counsel. Thus, Discovery was stopped dead as Plaintiff battled on, *pro se*, and attempted to retain counsel, secure new counsel, and get Discovery back on track. The enormity of these tasks has largely gone unnoticed and unappreciated by this Court. However, Plaintiff finally got things moving by filing his Initial Discovery Set on July 17, 2013. A week later, Defendants reciprocated with their own comprehensive Discovery Set instead of taking Plaintiff up on his written offer to reschedule a deposition. Remarkably, Defendants' enquiries were largely targeting information useful for their defunct debt-collection suit but irrelevant to this phone-abuse Case. Both Parties mutually submitted initial Responses and Objections in just under the 30-day limit— technically, leaving no room to file motions to compel disclosure, for the original Scheduling Order called for Discovery to conclude on August 19th. Plaintiff filed his own compel-Motion concomitantly with a Motion for new, extended Discovery Period and trial date on September 4th. Strangely, this Court has elected to hear the compel-Motion yet denied, probably contingently, the badly needed rescheduling, despite the obvious *exceptional* circumstances on which the request was made— circumstances which neither existed nor could have been foreseen at the time the original attorneys and the Court set up the current timetable. Defendants filed an untimely Opposition to Plaintiff's Motion to Compel on September 13, 2013, and a Motion for Sanctions 3 days later; both will be rebutted by week's end as both have the impact of dispositive motions, given Plaintiff's dire situation.

## Rationale to to Compel Disclosure of Data

What follows is a point-by-point discussion of the principal Discovery Objects to be addressed at the Hearing. Plaintiff *must* resolve certain technical matters directly impacting the gravamen of Plaintiff's FDCPA and tort Claims, *material evidence required* for a trier of fact will never be brought to the light of day and may very well be (or has already been) destroyed! Said evidence *is* in Defendants' (as fully defined) possession and must be properly disclosed; it cannot be obtained in any other way. Defendants can only hide their evidence for only so long, and Plaintiff now *needs* an Order to once again force Defendants to follow the FRCP. Plaintiff has been supplied nothing of significant value, **none of the major articles or admissions requested**— confirming the existence of substantial disputes of material fact— nor **the requested opportunity to inspect or copy** anything constituting or likely to lead to admissible evidence. Plaintiff was *intentionally* supplied nothing he was truly seeking to present and prove his case in chief at trial. "NULL-responses" is a perfectly appropriate description for the rehash supplied by Defendants in obvious bad faith. Virtually 98% of the book-length volume of submitted documents was *already in Plaintiff's possession* as <u>Pleadings</u> produced for the underlying Bexar County Case for debt-collection. That quantity-over-quality approach isn't fooling anybody. It is an obstruction of justice. Similarly, Defendants' Objections are uniformly improper, and this Court should overrule them for the pretexts and frauds that they are.

## Objects to be Compelled unto Disclosure

First, Plaintiff composed a *coherent* set of **21 Interrogatories** and served the same on Defendants, who elected to **answer the first 14 and ignore the rest**, absurdly claiming that Plaintiff had violated FRCP 33 and submitted more than 25 Interrogatories. Nor would they provide a

3

subsequent explanation of their counting methodology when explicitly asked, except to assert a manufactured, unenumerated set of "subparts" which added-up over 25. See the e-mail string documented in **Exhibit 1**. Plaintiff would have Defendants **present their incomprehensible Counting Method for judicial review at this Hearing.**

More significantly, Plaintiff is looking to disgorge from Defendants' employees, agents or contractors the straightforward **Caller-ID-*type* data** that he *knows* exists and which will not only completely corroborate his own 12 pages of illicit, crank calls logged by Plaintiff at his home over the course of years (cited on Page 5 of Plaintiff's <u>Amended Complaint</u>) that this abuse lasted but also which will reveal many *more* such calls— possibly even *hundreds*— which escaped Plaintiff's manual logging efforts. Such **best evidence**, more properly referred to as **"Called-ID" data** will not only perfect proof against Defendants in the central, FDCPA elements of the strict-liability aspect of this Case but will also substantially alter the Damages Model Plaintiff is employing to calculate make-whole remedies for presentation to the Jury; **new discrete defendants** may become identifiable as well. Both Parties *know* that this data exists—Defendants because they commissioned, conducted and/or archived such calls as part of their normal business practices using such commercially available hardware/software as "BroadcastByPhone" available from Voicent. AT&T has this data as well but will not release it except pursuant to a police order in a murder case. (This was the reason for Plaintiff's prior failed attempt to secure such call meta-data from AT&T directly.) Plaintiff *knows* due to his considerable professional experience in telephone and data engineering. The data exists and is discoverable and is *necessary* for Plaintiff's *prima facie* case! Defendants know this all too well but hope to prevail by thwarting discovery attempts, name-

4

calling, and repeating the litany "Plaintiff has no case," in all its various forms, on the theory that enough repetitions will appeal to a friendly forum anxious to clear its docket. Specifically...

## Calling— Methods, Data & Perpetrators

### KEY INTERROGATORIES (original numbering) IGNORED/AVOIDED

3.  IDENTIFY *all* persons known to Defendants to have personal knowledge of any facts or issues involved in or related to this Federal Case or the underlying Texas Cases, including your Clients **State Farm Bank**, HSBC Bank, and any other employee or business associate— current or former— for or with whom you collaborated to "persuade" Plaintiff or collect debts therefrom or to file and prosecute the underlying Cases against him, e.g., Bexar County No. 370251 and 357971. Be sure to **cite all your personnel and associates who** *ever* **had physical, remote or electronic access to the home-telephone number of the Plaintiff by any personal identifier under which you have him filed. Specify what capacity said access entailed or would have entailed and which individuals actually placed or caused to be placed a phone call to the Plaintiff's home** during the period dating back to when Defendants filed collection lawsuits against him.

Argument: The record will show that Defendants simply ignored and failed to respond, object to or distinguish the (highlighted) second half of the above Interrogatory. Nor did or would they permit Plaintiff access or opportunity to inspect or copy such raw data from which he could obtain such case-critical information. And these are *early-on* Interrogatories... far within the range Defendants arbitrarily counted to 25 and quit responding. They are without excuse to continue withholding information and must be forced to disclose under The Rules. *Bank One v. Abbe*, 916 F.2d 1067, 1077 (6th Cir. 1990).

7.  IDENTIFY and describe any and all Documents that describe, record, or establish Defendants' **methods and techniques used to collect debts** from Plaintiff and all others similarly situated for a period of three (3) YEARS before the date of Defendants' collection lawsuit against Plaintiff in State Court to the present.

8.  IDENTIFY and describe fully any and all **computerized, automated, manual, or other communications system(s) that Defendants use, procure, maintain or operate to produce, record,**

5

and transmit any and all mail, telephonic messages, in-person calls, and other forms of (attempted) communication with collectees or related third parties in connection with the collection of credit-card accounts for your clients. Be certain to include all electronic equipment, by model number and manufacturer/modifier, which you or your associates used to make phone calls to or recordings of the Plaintiff, and graphically delineate how each element operates and is interconnected to the DDD Network so as to link said equipment to the **Plaintiff's home telephone** in San Antonio.

9. IDENTIFY whether and **how the Defendants made and recorded telephone calls, by any means, to or from any person**— especially the Plaintiff— from whom they were or are attempting to collect (alleged) debts, and **what policies and procedures are taken to preserve and manage these recordings and all related system of records**. Particularly, describe the current location, state or disposition of any recordings sent to or received from the Plaintiff by stating the following:

    a. The name of the individual initiating the recorded call;

    b. The name of the person and/or description of the person to whom the call was directed and the number dialed;

    c. The date, duration, and time of the call, including the number of rings;

    d. The **call method** (e.g., robo-call, abandoned call, person-to-person call, ring-only);

    e. A detailed description of the substance of the call (do not simply cross-refer to collection notes);

    f. Identification of all witnesses to or participants in the call, including the individual **female whose voice is used to make recordings for your automated, robo-calls to consumers under the name "Wendy Shower"**; list how many versions of such recordings she has produced; and

    g. Any **actions taken** by any Defendant as a **result** of the call.

14. IDENTIFY the business name, address, and telephone number of all persons, companies, corporations or other **entities who provided local or long distance telephone services of any kind to Defendants' business,** as well as identifying the **telephone numbers** and account numbers for each such local and long distance service provider, for a period of three (3) YEARS before the date of Defendants' collection lawsuit against Plaintiff in State Court to the present.

15. IDENTIFY *every* **local or long-distance call made or caused to be made to Plaintiff's home telephone by Defendants**— in the course of their business(s) or otherwise— and cite every corresponding line-account **number, telephone number (WATS, outdial, etc.) extension, collector number, access code, and calling card used to make said calls,** along with the corresponding

6

telephonic or Internet service provider supporting each call for a period of three (3) YEARS before the date of Defendants' collection lawsuit against Plaintiff in State Court to the present.

16.     IDENTIFY the business name, address, and **telephone number** of all persons, companies, corporations, or other **entities who provided predictive dialing, auto-dialing, robotic-dialing, automated voice-messaging, text-messaging, emailing, and similar services to Defendants' business**, and delineate **the equipment they employ** to deliver such services. Be sure to identify **the telephone numbers and account numbers for each such in-house or contracted service provider who ever dialed the Plaintiff at his home** for a period of three (3) YEARS before the date of Defendants' collection lawsuit against Plaintiff in State Court to the present.

17.     IDENTIFY all documents, reports, spreadsheets, notes or other **records summarizing, detailing tracking or archiving the quantity, frequency, date, dial/ring/call duration, and time of day of any attempt by Defendants directly or by one or other of its service providers to contact Plaintiff by telephone at his home telephone number, (210) 492-1439**— whether the call was completed each time or merely permitted to ring— along with the **physical location of where that call was placed or initiated**. Be sure to include the identity(s) of custodian(s) of such records or system of records.

19.     IDENTIFY the business name, address, and telephone number of all persons, companies or other entities who have provided **skip-tracing, locator or similar investigative services** to Defendants' business for a period of three (3) YEARS before the date of Defendants' collection lawsuit against Plaintiff in State Court to the present. Describe **their involvement with Plaintiff's Account along with any calls they might have placed to his home.**

<u>Argument</u>:    The record will show that Defendants simply relied on boilerplate objection to avoid this next set of Interrogatories. Nor did or would they permit Plaintiff access or opportunity to inspect or copy such raw data from which he could obtain such case-critical information. And at least these first three are *early-on* Interrogatories... far within the range Defendants arbitrarily counted to 25 and quit responding. These are plainly relevant technical questions that any similarly situated plaintiff would require to *prove* and FDCPA case with hard data— to avoid the trial from degenerating into a my-word-versus-their-word affair. Plaintiff alone *knows* he was called all those hundreds of times, but sincerity is not proof. Even Caller-ID machines produce ambiguous results since professional abusers know dozens of ways to mask their calling numbers,

7

and the $10/month subscription cost for a landline is not for an indigent plaintiff. ONLY the above-described "Called-ID" data from the Defendants' own machines will suffice to fully demonstrate the case in chief. When Defendants' list of robo-calls corresponds to Plaintiff's Call-List they will no longer be able to deny making such calls and willfully! Moreover, robo-call records *exist* for all such collectors as the Defendants, pollsters, telemarketers, and others who rely on call-for-hire because if they couldn't archive and subsequently *prove* to their clients each and every call made to a consumer or equivalent target they *could not collect payment* for services rendered! It is an outrageous lie to pretend such data does not obviously exist.

Furthermore, *already-produced data from Defendants establishes that such System of Records does exist* and is catalogued by Plaintiff's 10-digit telephone number, just as predicted in his Interrogatories! See the first Paragraph on Page 1 of Exhibit 1: Calls are further catalogued by the employee/contractor making the call to Plaintiff's home. The totality of the *rest* of such archived entries *needs* to be collected so that a full and accurate picture of Defendants' sanctioned conduct can be analyzed and presented to a trier of fact and law at trial. Finally, with such powerful indicators of the use and existence of the data Plaintiff seeks, said data *must* be produced. *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008). Defendants' conduct should be handled as a failure to disclose, answer or respond. *Beard v. Braunstein*, 914 F.2d 434, 446 (3rd Cir. 1990).

## Calling— Corporate Policies, Training & Discipline

### KEY INTERROGATORIES (original numbering) IGNORED/AVOIDED

5.   IDENTIFY and describe with particularity all **training** that Defendants procure, provide or receive in the area of debt collection for a period of three (3) years before the date of Defendants' collection lawsuit against Plaintiff in State Court to the present, including:

    a.    the training content, timing, and duration,

    b.    all documents and audio-visual materials used in such training and on the job,

    c.    each person involved in providing such training, and

    d.    each person receiving training, if any, and the level of training provided said person(s) having anything to do with the collection from or prosecution of Plaintiff by Defendants.

6.    IDENTIFY and describe Defendants' **disciplinary policy(s) for violating state or federal laws** or regulations regarding debt collection and activities likely to occur in the course thereof.

20.    IDENTIFY all **lawsuits brought against Defendants at any time arising out its (attempted) collection activities** for a period of three (3) YEARS before the date of Defendants' collection lawsuit against Plaintiff in State Court to the present; be sure to supply the correct legal caption, the court file number, the jurisdiction, the date of filing, and the final disposition or current status.

21.    IDENTIFY all **other legal claims, equitable claims, regulatory complaints, regulatory reports, arbitrations, mediations, court settlements, out-of-court settlements, or any other (in)formal proceedings, Better Business Bureau, Commerce Department, or other regulatory complaints made against Defendants, their employees or their other collection associates at any time arising out their (attempted) collection activities** for a period of three (3) YEARS before the date of Defendants' collection lawsuit against Plaintiff in State Court to the present; please furnish the correct caption (if any), the name of the complaining party(s), the file number, the jurisdiction, the date of filing, and the final disposition or current status of the claim, complaint or proceeding.

<u>Argument</u>: Incorporating the above Arguments, the record will show that Defendants again ignored and failed to respond, object to or distinguish the above Interrogatories using nothing more than improper, canned objections. Nor did or would they permit Plaintiff to inspect and copy on his own. These things are ordinary elements comprised in any ordinary business employing technology-assisted methods. They *have* to exist in tangible form to enable such businesses to turn a profit with an effective workforce and to avoid personnel problems when legal boundaries are crossed. Plaintiff requires this information to determine and affix appropriate responsibility on the corporate actors in the Defendants' ranks. This goes to the critical element of *willfulness* for the trier of fact and further affects the Damages Model Plaintiff will present thereto.

Moreover, with all the unusual volume of caselaw cited against the Defendants at the beginning of Plaintiff's <u>Complaint</u>, it needs to be determined whether or not rank lawlessness is actually part of their business plan and thus outcome-determinative for this Case as well a potential referral to the district attorney to deal with such a public nuisance.... The Court needs to compel production of this information at least for the goldmine of material, admissible evidence to be surely adduced.

## <u>Calling— Case Origins & Collateral Damage</u>

### KEY INTERROGATORIES (original numbering) IGNORED/AVOIDED

10. In the form of a **chronology**, IDENTIFY and describe with particularity the process, events, and circumstances under which the **debt** allegedly owed by Plaintiff to State Farm Bank was **referred, placed or otherwise assigned to the Defendants for collection**, including all documents related to or reflecting such referral, placement or assignment.

18. IDENTIFY any **input(s) to any form of consumer-credit report considered or submitted by Defendants against Plaintiff**, by any personal identifier whatever. You may attach a copy(s) of such credit report(s) as responsive to this Interrogatory as long as said report specifies Defendants' contribution thereto.

<u>Argument</u>: Incorporating the above Arguments, the record will show that Defendants again ignored and failed to respond, object to or distinguish the above Interrogatories using nothing more than improper, canned objections. Nor did or would they permit Plaintiff to inspect and copy on his own. These things are ordinary elements of recorded business history. They *have* to exist in tangible form to enable such businesses to maintain internal accountability. Plaintiff requires this information to determine and affix appropriate responsibility on the corporate actors in the Defendants' ranks and track the steps by which Plaintiff came to targeted by them—to see how well, if at all, they followed their own overt procedures. This also goes to the critical element of *willfulness* for the trier of fact and further affects the Damages Model Plaintiff will present.

# KEY PRODUCTION REQUESTS (original numbering) IGNORED/AVOIDED

Congruent with the categories listed and above-discussed for Plaintiff's submitted Interrogatories, the following Requests for Production of paper/electronic records—to have outright or to inspect and copy personally— these too were virtually ignored outright by Defendants with no more creative effort than the crudest, improper objections. Worse still, the nadir of relevance and rectitude was reached as Defendants actually asserted **trade-secret protection** for basic business records like call-archiving data (RFP-13), auto-dialer maintenance records (RFP-13), cataloguing glossary and structure for system of call-records (RFP-15)! As if any patent or other protection for intellectual property could be enforced in furtherance of serial FDCPA violations or the commission of any other crime! Counsel does not even identify the state(s) of the Union where such "trade secret" is registered under the Uniform Trade Secret Act nor the title(s) of the invention or property protected. The impropriety of such impossible objections is as laughable as it is advanced in bad faith. Could any stronger basis for additional SANCTIONS exist? As bad, Defendants assert **attorney-client privilege** for ordinary business records kept to monitor debt-collection progress (RFP-11), where no attorney would have any routine involvement! Sloppy and cynical... and more bad faith!

Although obviously and carefully crafted to complement the scope and subject matter of said Interrogatories, there can be little doubt that Plaintiff *requires* this even more narrowly drawn data sought by the RFPs below to make out his *prima facie* case with actual *proof* and present a complete and coherent picture to the jury. These articles of information are not likely to lead to the production of relevant, material evidence; they *are* that evidence— the **best evidence obtainable**—

11

unobtainable from any other source! This Court is asked to compel the production of all these documents and other records for all the corresponding argumentation advanced above:

## Calling— Corporate Policies, Training & Discipline

### KEY RFPs (original numbering) IGNORED/AVOIDED

2. PRODUCE any and all Documents and tangible exemplars summarizing, describing, **instructing**, detailing, orienting or otherwise **training** any and all of Defendants' employees or (sub)contractors, especially new-hires, in any or all of the following areas:

   a. Collection **policies**,

   b. Collection procedures,

   c. Collection **methods**,

   d. Collection **techniques**,

   e. Collection tactics,

   f. Collection rules,

   g. Collection regulations, and

   h. Compliance with **state and federal laws/regulations** as well as commercial codes.

3. PRODUCE any and all **training, personnel, or other instruction manuals** used by any and all collection personnel who are employed by or supervised by Defendants.

4. PRODUCE any and all **debt-collection software manuals and/or instruction guides** for each and every computer system, software package, software system, telephone-dialing/recording system, electronic or other **device used in any manner by Defendants for collecting debts**. Produce also the most recent **maintenance, archiving, and calibration records** for the above-described phone-calling system(s) you have utilized since suing Plaintiff and identify with precision how said **maintenance and calibration is accomplished on all machines and automated elements**, including all methods of choosing, listing, programming, updating, verifying, storing, and validating telephone numbers to call for debt-collection purposes.

5. PRODUCE any and all Documents related to or evidencing any **lawsuits, legal claims, equitable claims, regulatory complaints, regulatory reports, arbitrations, mediations**, in-court settlements, out-of-court settlements or any equivalent proceedings, formal or informal, to which

12

any Defendant has been named as a witness or a party, that have existed or been brought with respect to or involving any Defendant, and which involved as all or part of their debt-collection business for a period of three (3) YEARS before the date of Defendants' collection lawsuit against Plaintiff in State Court to the present

6. PRODUCE any and all personnel files, human resource department records, employment files, and other documents including all **disciplinary notices, performance appraisals, written or verbal reprimands, incident reports, job applications, résumés, memos, and electronic recordings of debt-collection communications that were the subject of private or other complaints** against any employee or (sub)contractor. Prior to production, please redact all personal identifiers in these records such as dates of birth, social security numbers, home addresses, medical information, and retirement plan data.

## Calling— Methods, Data & Perpetrators

KEY RFPs (original numbering) IGNORED/AVOIDED

9. PRODUCE all Documents recording, documenting or otherwise **tracking Defendants' attempts to collect a debt from Plaintiff**, including:

   a. Records of all inbound or outbound **telephone calls, to or from Plaintiff**;

   b. Records of all inbound or outbound United States **mail**, to or from Plaintiff.

   c. Records of all other inbound or outbound **communication** of whatever kind to or from Plaintiff.

11. PRODUCE all **printouts or other reports** printed, prepared, or created using any computer system, software package, software system, or other electronic or mechanical device used in any manner by Defendants **to monitor its collected debts**, which (might or should) **include Plaintiff's** name, address, telephone number, account number, or any other information which is traceable or personally identifiable to him. Please produce these items in a humanly readable, searchable format— no machine or encrypted language.

12. PRODUCE a plain-English description or **glossary** for all lists, legends, codes, abbreviations, collector initials, or other nonobvious terms, symbols, jargon, or data contained in any of the Documents produced above.

13. PRODUCE the most recent **maintenance and archiving records for the above-described phone-calling system(s)** you have utilized during the past 4 years and identify with detail and precision how said maintenance and calibration is accomplished on all machines and automated elements, including all methods of choosing, listing, programming, updating, verifying, storing, and validating telephone numbers to call for debt-collection purposes.

13

15. PRODUCE an explicit architecture of your **system of records** whereby you receive, encode, list, call, store, and update the names and telephone numbers of alleged debtors you attempt to collect from for a period of three (3) YEARS before the date of Defendants' collection lawsuit against Plaintiff in State Court to the present.

## Calling— Case Origins & Collateral Damage

### KEY INTERROGATORIES (original numbering) IGNORED/AVOIDED

14. PRODUCE a **geographical map or chart which illustrates the Calling Plan and Corporate Network by which you and your associates placed calls to the Plaintiff's home** via the Direct Distance Dialing (DDD) Network or Internet or any private network, including all offices or operator sites which you control, contract for or lease **inside or outside the borders of Texas**. List the 10-digit INWATS, OUTWATS, outdials, and regular **phone numbers of every calling, recording or broadcasting machine/dialer owned or used by you or your associates to place calls to Plaintiff's home** in San Antonio and label these on the requested map/chart for a period of three (3) YEARS before the date of Defendants' collection lawsuit against Plaintiff in State Court to the present

## REQUESTS FOR ADMISSION to be REEXAMINED:

In light of the volume of the badly needed, yet illicitly withheld, information to be supplied by Court Order, Plaintiff further requests that Defendants be compelled to *reexamine and answer* the following four RFAs more fully and truthfully:

2. ADMIT THAT: This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ("FDCPA") and out of the invasions of Plaintiff's personal

13. ADMIT THAT: Several plaintiffs have suffered actual damage as a result of Defendants' illegal collection communications at least in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, and embarrassment as well as suffering from unjustified, disproportional, unreasonable, and abusive invasions of personal privacy at home.

14. ADMIT THAT: The acts and omissions of the Defendants, including their employed and (sub)contracted debt collectors and related agents who communicated with the Plaintiff as herein described, were committed or omitted within the scope of their mutual employment or association in a legal agency relationship, the Principal being the individual Defendants RSEIH.

15. ADMIT THAT: The acts and omissions of the Defendants, including their employed and (sub)contracted debt collectors and related agents who communicated with the Plaintiff as herein described or otherwise assisted or enabled said communications, were incidental to or of the same general nature as the specific duties or responsibilities said agents were authorized to perform or omit by the individual Defendants RSEIH for their business of collecting consumer debts.

## Conclusion

In light of the foregoing exhibits, explanations, arguments, and cited authorities, Plaintiff herewith supports and fully justifies his previously filed Motion to Compel Disclosures from the Defendants, broadly defined. Plaintiff will re-present and explicate these matters further at the Hearing on September 25th, where a bench decision will be urged; a new Order is herewith attached. This Court should be able to GRANT the underlying Motion with relative speed. Even assuming perfect compliance from Defendants in less than a 24-hour period, Plaintiff will still require further time to analyze and organize disclosed data for trial and will move this Court for an appropriate order in due course. As prayed before, Plaintiff prevailing now requests that this Court AWARD him at least **$1500 as** litigant/attorney fees and costs, to be expeditiously borne by Defendants, along with whatever additional legal or equitable relief for which he has shown himself justly entitled by vigorously and effectively contending *pro se* with the sheer *volume* of pre-trial actions and omissions of Opposing Counsel, who himself has been rabidly grasping for mountains of reciprocal fees at a posted rate of $450/hour... plus costs! By contrast, Plaintiff's compensation would be more than reasonable to achieve due compliance with the Rules.

## Verification

I, the undersigned Plaintiff in this Case, have composed, read, and had an opportunity to edit this above-appended <u>Memorandum...</u> consisting of 17 typed pages, plus 7-page <u>Exhibit</u>, and do hereby swear and affirm that all citations and facts herein asserted are true and verifiable to the best of my knowledge and belief under penalty of perjury in accordance with 28 U.S.C. §1746:

*/s/ Dennis Olivares*
Dennis Olivares, *pro se*
seravilo@netzero.net
10935 Whisper Ridge
San Antonio, Texas 78230
(210) 492-1439 [voice & telefax]
September 24, 2013


## Certificate of Service

I, Dennis Olivares, certify that I have served a true and correct copy of the foregoing <u>Memorandum in Support of Motion to Compel Initial Discovery</u> upon Manny Newburger— Attorney for the Defendants— by e-mail to his office of record @ #104, 1212 Guadalupe in Austin, Texas 78701 on this 24th day of September, 2013:

*/s/ Dennis Olivares*
Dennis Olivares, Plaintiff *pro se*